UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM W., II,<br><br>                          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                       Defendant. | Case No.: 3:18-cv-2443-LAB-RBM<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Docs. 9, 11.]** |

## I.   <u>INTRODUCTION</u>

Plaintiff William W., II ("Plaintiff") filed a Complaint pursuant to 42 U.S.C § 405(g) to obtain judicial review of a final decision by the Commissioner of Social Security ("Defendant" or "Commissioner") denying him social security disability insurance benefits.[1]  (Doc. 1.)  Presently before the Court are: (1) Plaintiff's Motion for Summary

---

[1] Title 42, United States Code, section 405(g) states: "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States . . . .  The Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

Judgment ("MSJ") (Doc. 9); (2) Defendant's Cross-Motion for Summary Judgment ("Cross-MSJ") (Doc. 11); (3) Defendant's Opposition to MSJ (Doc. 12); (4) Plaintiff's Opposition to Cross-MSJ (Doc. 13); (5) Plaintiff's Reply in Support of MSJ (Doc. 14); and (6) the Certified Administrative Record ("AR") (Doc. 7).

The matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1. After careful consideration of the moving and opposing papers, as well as the AR and applicable law, it is respectfully recommended that Defendant's Cross–MSJ be **GRANTED**, Plaintiff's MSJ be **DENIED**, and the decision of the Administrative Law Judge ("ALJ") be **AFFIRMED**.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

On December 2, 2014, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging onset of disability on January 28, 2014. (AR, at 154-59, 195.) The application was denied initially and upon reconsideration. (AR, at 46-76.) Plaintiff then requested a hearing before an ALJ, which took place on July 11, 2017. (AR, at 27-45.)

At the hearing before the ALJ, Plaintiff testified he was born September 24, 1962[2] and has an associate's degree and past work experience as a Licensed Vocational Nurse ("LVN"). (AR, at 31.) Plaintiff has not worked as an LVN since January 28, 2014. (AR, at 12, 31.) Plaintiff testified he is disabled due to left-eye blindness. (AR, at 32.) He reports no central vision in the left eye, only peripheral vision. (AR, at 32.) Despite left-eye blindness, Plaintiff can drive, read, watch television, and use a computer without difficulty during the day. (AR, at 33.)

Plaintiff also claims he is unable to work due to post-traumatic stress disorder ("PTSD"), the symptoms of which are attributable to a military service-connected incident from 1986. (AR, at 33, 1036; Doc. 9-1, at 8-9.) According to Department of Veterans

---

[2] Plaintiff was fifty-two years of age at the time he submitted an application for disability benefits and fifty-four years of age at the time of the hearing before the ALJ.

Affairs ("VA") medical records and Plaintiff's testimony before the ALJ, Plaintiff responded to an auto accident involving several of his friends while serving as an emergency room medic for the Whiteman Air Force Base in Missouri. (AR, at 33, 1036.) One of Plaintiff's friends died at the scene of the accident and one bled to death in front of Plaintiff. (AR, at 33, 1036.)

Plaintiff takes medication to treat his PTSD; however, Plaintiff testified PTSD makes it difficult for him to understand and comprehend situations. (AR, at 34, 39.) Although Plaintiff believes his PTSD symptoms caused his termination from employment as an LVN, VA medical records state Plaintiff's former employer terminated him due to unprofessional conduct. (AR, at 34, 965.) According to Plaintiff, he has difficulty in many situations and is only able to focus for ten to fifteen minutes on any given task. (AR, at 34-35.) For instance, Plaintiff gets frustrated with everyday tasks such as setting up a printer or mounting a television on the wall and often relies upon his wife for assistance. (AR, at 34-35.) Plaintiff testified he has nightmares every night and experiences visual hallucinations, such as seeing images of dead people, approximately three or four times per month. (*Id.*, at 40.) Notwithstanding the reported symptoms and limitations, Plaintiff's day-to-day activities are as follows: Plaintiff wakes up at 6:00 a.m., has coffee, soda and breakfast, and talks and watches television with his wife. (AR, at 35.) Plaintiff also takes walks, lasting from thirty minutes to one hour. (AR, at 36.) He plays computer games for ten to fifteen minutes at a time and occasionally goes out to lunch. (AR, at 36.)

Plaintiff has a history of alcohol abuse. According to VA records, he visited a psychiatric emergency room in April 2014 related to his alcohol abuse. (AR, at 964.) Plaintiff is currently sober and attends Alcoholics Anonymous ("AA") meetings at least twice per week. (AR, at 36-37.) According to VA medical records, Plaintiff reported AA meetings are "invaluable for not only his alcohol use problems but also for his PTSD symptoms." (*Id.*, at 1029.)

///

///

3

On September 17, 2014, the VA issued Plaintiff a 100 percent disability rating (80 percent PTSD and 30 percent vision)[3] and found him eligible for "individual unemployability" effective February 1, 2014. (AR, at 999-1001.) The VA based its decision, in part, on a June 19, 2014 Disability Benefit Questionnaire ("DBQ") evaluating Plaintiff for PTSD. (AR, at 1001.) Psychologist Carol Randall, Ph.D., completed the June 2014 DBQ, which also reviewed an initial PTSD evaluation conducted by psychologist Richard E. Townsend on April 1, 2013.[4] (AR, at 549-559, 1025-1046.) The June 2014 DBQ diagnosed Plaintiff with PTSD and alcohol use disorder, finding Plaintiff suffers "[o]ccupational and social impairment with deficiencies in most areas, such as work . . . judgment, thinking and/or mood." (Id., at 1027.) Dr. Randall found it impossible to differentiate what portion of the occupational and social impairments are caused by PTSD and alcohol use disorder. (Id., stating, "[a]lthough a majority of the Veteran's current impairment in functioning is due to his PTSD symptoms, a portion of his dysfunction is also due to his Alcohol Use Disorder. Consequently, determination of proportion of impairment due specifically to each disorder would require resort to mere speculation.") The ALJ considered the VA rating and found Plaintiff's PTSD and left-eye blindness caused work-related functional limitations, but concluded these impairments do not preclude all work activity. (AR, at 12, 18-19.)

The ALJ issued a decision on January 16, 2018, finding Plaintiff was not disabled during any period through the date of the decision. (AR, at 10-19.) On March 14, 2018, Plaintiff requested review of the ALJ decision. (AR, 146-149.) The Appeals Council denied Plaintiff's request for review, wherein the ALJ's decision became final. (AR, 1-3.) This civil action followed.

///

---

[3] Plaintiff's counsel testified to these percentage allocations of disability at the hearing before the ALJ. (AR, at 39.)

[4] The purpose of the initial April 13, 2013 DBQ is for "disability evaluation, not for treatment purposes." (AR, at 549.)

4

## III.    SUMMARY OF THE ALJ'S FINDINGS

To qualify for disability insurance benefits, a claimant must demonstrate a medically determinable physical or mental impairment that: (1) prevents him from engaging in substantial gainful activity; and (2) is expected to result in death or last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work he previously performed and incapable of performing any other substantial gainful employment in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999) (citing 42 U.S.C. § 423(d)(2)(A)).  To decide if a claimant is entitled to benefits, an ALJ conducts a five-step sequential evaluation process as outlined in 20 C.F.R. § 404.1520.

Here, the ALJ analyzed Plaintiff's claim using the five-step process and concluded Plaintiff is not disabled within the meaning of the Social Security Act.  (AR, at 12.)  At step one, the ALJ found Plaintiff lacked any substantial gainful activity ("SGA") since January 28, 2014, the alleged onset of disability. (AR, at 12.)  Analyzing step two, the ALJ found Plaintiff has severe impairments including PTSD, left-eye blindness, obesity, history of alcohol abuse, and major depressive disorder.  (AR, at 12.)  At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or equal the severity of any of the Commissioner's Listing of Impairments enumerated in the Code of Federal Regulations.  (AR, at 12.)

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and concluded Plaintiff can perform a full range of work at all exertional levels but with the following limitations: "[h]e is limited to nonpublic work involving simple, routine tasks. He should not be exposed to hazards.  He should have no more than occasional interaction with coworkers and supervisors in a habituated setting.  The claimant is limited to work which could be performed with monocular vision."  (AR, at 14.)  At step four, the ALJ considered Plaintiff's RFC and testimony of a vocational expert ("VE") in finding Plaintiff is unable to perform his past relevant work as an LVN.  (AR, at 17.)  Considering this same

evidence at step five, the ALJ concluded jobs exist in significant numbers in the national economy that Plaintiff can perform, including positions as a cleaner, dishwasher, and machine tender. (AR, at 19.) Accordingly, the ALJ found Plaintiff does not have a disability as defined in the Social Security Act from January 24, 2014, through the date of his decision. (AR, at 19.)

## IV.  DISPUTED ISSUES

Plaintiff contends the ALJ's decision should be reversed or remanded, and raises the following issues:

1.    Whether the ALJ's decision is based on application of correct legal standards?

2.    Whether the ALJ properly considered all evidence of record in issuing his decision?

3.    Whether the ALJ properly considered opinions of Plaintiff's treating physicians and the VA?

The Court focuses its analysis to issues two and three, as resolution of these issues is germane to the first issue.

## V.  STANDARD OF REVIEW

A district court should affirm an ALJ's decision if it is supported by substantial evidence and based on application of correct legal standards. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Stated differently, the decision will be disturbed *only if* it is not supported by substantial evidence or is based on legal error. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's

conclusion." *Id.* "[W]here the evidence is susceptible to more than one rational interpretation," the Court must uphold the Commissioner's decision. *Id.* at 1039-40.

## VI. <u>DISCUSSION</u>

Plaintiff contends the ALJ failed to properly consider the evidence of record, including Plaintiff's subjective claims of impairment, opinions of Plaintiff's treating physicians, and the VA disability rating. (Doc. 9-1, at 9, 12.) Defendant contends the ALJ articulated legally-sufficient reasons for discounting Plaintiff's subjective claims of impairment and properly considered the evidence of record. (Doc. 11-1, at 4-5.) As outlined below, the ALJ's decision is supported by substantial evidence and based on application of correct legal standards. Accordingly, it is respectfully recommended that the Court **AFFIRM** the ALJ's decision.

**A. Reversal is Not Warranted Because the ALJ Properly Considered the Evidence of Record and Articulated Legally-Sufficient Reasons for Discounting Plaintiff's Subjective Claims of Impairment**

The parties dispute whether the ALJ properly discounted Plaintiff's subjective claims of impairment. The ALJ found Plaintiff's testimony as to his disabling symptoms and limitations unsupported by objective medical evidence. (AR, at 17.) Specifically, the ALJ discounted Plaintiff's subjective claims of impairment finding: (1) Plaintiff's left-eye blindness does not preclude all vision abilities; (2) Plaintiff's allegations as to the severity of his PTSD symptoms are unsupported by objective medical findings; (3) Plaintiff's subjective complaints and limitations are inconsistent with his activity level; and (4) Plaintiff's impairments are adequately controlled with medication. (AR, at 15-17.)

When analyzing the evidence of record as to a claimant's physical and/or mental condition, an ALJ can reject a claimant's subjective allegations of impairment "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see Lester v. Chater*, 81 F.3d 821, 825 (9th Cir. 1995) (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical

evidence of an underlying impairment); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (clear and convincing reasons exist to discredit a claimant's subjective complaint testimony when the ALJ points to specific evidence in the record which undermines the claim of disability). In weighing a claimant's credibility, the ALJ may consider the extent to which a claimant's allegations of disabling impairments are consistent with objective medical evidence, the claimant's daily activities and the claimant's ability to treat symptoms with medication. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Crosby v. Comm'r of Soc. Sec. Admin.*, 489 F. App'x 166, 168 (9th Cir. 2012) (it is proper to consider medical records to evaluate credibility of claimant's subjective statement of impairment). An ALJ may discredit a claimant's subjective statements of impairment, but the ALJ must "identify what testimony is not credible and what evidence undermines the claimant's complaints." *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (finding inconsistencies in claimant's reported symptoms and activities supported ALJ's decision discrediting claimant's subjective complaints of impairment); *see also Dodrill v. Shaiala*, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it).

      1.   <u>Visual Impairment</u>

The ALJ articulated clear and convincing reasons for discrediting Plaintiff's subjective claims of disability due to visual impairment, as Plaintiff's claimed limitations were undercut by objective medical evidence and Plaintiff's own testimony. *Crosby*, 489 F. App'x at 168; *Berry*, 622 F.3d at 1234.

While Plaintiff claims left-eye blindness is a disabling condition rendering him unable to work, the ALJ determined that vision loss in Plaintiff's left eye precludes tasks requiring binocular vision but does not preclude all vision abilities. (AR, at 16.) In making this finding, the ALJ relied upon opinions of medical consultative examiners, who opined Plaintiff is able to continue performing tasks requiring only monocular vision and found Plaintiff's ability to read and do other close work was not compromised. (AR, at 16-17,

54, 67.) In accordance with applicable regulations, the ALJ addressed Plaintiff's inconsistent evidence regarding the limiting effects of his left-eye blindness. (AR, at 16-17; *see* 20 C.F.R. § 404.1529(c)(4) (in determining the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence . . . ."); 20 C.F.R. § 404.1529(c)(3) (factors relevant to symptoms include claimant's daily activities).) The ALJ cited to Plaintiff's activities of driving, reading, watching television, and operating a computer during the day, as evidence of Plaintiff's ability to perform basic work tasks despite his alleged visual impairment. (AR, at 17, 33.)

Considering the objective medical evidence and Plaintiff's reported daily activities outlined above, the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective statements of impairment. *Benton*, 331 F.3d at 1040; *see also Berry*, 622 F.3d at 1234. The ALJ's finding that Plaintiff's left-eye blindness does not preclude all work should be affirmed because it is based upon substantial evidence of record. *Penny*, 2 F.3d at 956; *Andrews*, 53 F.3d at 1039-1040.

2. Severity of PTSD

The ALJ properly discounted Plaintiff's subjective claims regarding the severity of his PTSD symptoms based upon several factors, including Plaintiff's subjective statements being inconsistent with objective medical evidence, Plaintiff's ability to control symptoms with conservative treatment, and Plaintiff's remission from alcohol abuse which previously aggravated PTSD symptoms.

An ALJ considers all evidence presented, including information from medical sources regarding symptoms, such as "what may precipitate or aggravate [claimant's] symptoms, what medications, treatments or other methods [claimant] use[s] to alleviate them, and how the symptoms may affect [claimant's] pattern of daily living . . . ." 20 C.F.R. § 404.1529(c)(3).

///

9

Plaintiff testified PTSD renders him disabled. (AR, at 33.) He testified he has difficulties understanding and comprehending situations and attributes his termination from employment to these limitations. (AR, at 15, 34.) However, the ALJ found objective medical evidence did not support these claimed limitations. (AR, at 15.) The ALJ found medical records from VA mental status examinations persuasive, where clinicians consistently observed Plaintiff as oriented in all spheres and showing a normal, linear thought process. (AR, at 13, 15, 268, 522, 894, 910, 957, 967, 1111, 1133.) As outlined in section VI.A.4, *infra*, the ALJ also found Plaintiff effectively treats his PTSD symptoms with medication. (*Infra*, 13-14; AR, at 15.) Although Plaintiff attributes PTSD symptoms as the basis for his termination from prior employment, the ALJ cited to a VA health record to find Plaintiff's prior substance abuse disorder may have been a factor causing his termination. (*Id.* at 15-16, 950.) The ALJ also cited to VA progress notes in finding Plaintiff's mental impairments have improved since his remission from alcohol abuse. (*Id.* at 16; *see*, 1188-1189 [progress notes state Plaintiff reported to be in early remission from alcohol abuse, experienced fleeting visual hallucinations related to PTSD and declined individual and group psychotherapy].) Finally, the ALJ cited to VA progress notes which indicated Plaintiff has never been hospitalized due to psychiatric issues. (*Id.* at 16, citing AR, at 1395, 1418.)

The ALJ properly relied upon the factors identified above to issue findings discrediting Plaintiff's subjective claim of disability due to PTSD. 20 C.F.R. § 404.1529(c)(3); *Crosby*, 489 F. App'x at 168. Thus, the ALJ provided clear and convincing reasons for rejecting Plaintiff's allegations of disability due to PTSD. Substantial evidence of record supports the ALJ's decision that Plaintiff's PTSD does not preclude all work, therefore, it should be affirmed.

3.  Plaintiff's Activity Level

In assessing Plaintiff's capability to perform basic work activities, the ALJ properly relied upon Plaintiff's daily activities to discredit Plaintiff's subjective complaints of impairment.

An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1031. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (internal citations omitted). Inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors, are relevant for the ALJ to weigh when making a disability determination. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Even where those activities suggest some difficulty functioning, there may be grounds for discrediting the claimant's testimony to the extent that activities contradict claims of a totally debilitating impairment. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Valentine*, 574 F.3d at 694.

Plaintiff testified he is unable to do anything, even the simplest of tasks, for more than ten or fifteen minutes without becoming overwhelmed. (AR, at 35.) However, the ALJ found the totality of Plaintiff's daily activities are inconsistent with Plaintiff's alleged disabilities, as the activities show greater functioning than alleged. (AR, at 13, 15-16, 35.) Plaintiff contends the ALJ erred in solely relying upon Plaintiff's daily activities of driving, watching television, cooking and shopping, in assessing Plaintiff's ability to work because these activities are not easily transferable to a work setting. (Doc. 9-1, at 9, citing *Smolen*, 80 F.3d at 1284.) Plaintiff also claims the ALJ failed to consider all factors set out in Social Security Ruling ("SSR") 95-5P[5] for purposes of evaluating whether Plaintiff's symptoms limit his ability to perform work-related activities. (Doc. 9-1, at 11, 13-14.) As pointed out by the Commissioner, SSR 16-P is the controlling sub-regulatory policy required to be

---

[5] Pursuant to 20 C.F.R. § 402.35(b), the SSA publishes SSRs which are binding on all components of the SSA and represent "precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." However, SSRs do not carry the force of law. *Bray*, 554 F.3d at 1224 (citation omitted).

11

considered by the ALJ because the decision under review was issued on January 16, 2018. (Doc. 12-1, at 12; *see also* SSR 16-3P, 2017 WL 5180304, *1 (Oct. 25, 2017) (stating, "[w]hen a Federal court reviews our final decision in a claim . . . we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review.").)

Consistent with the guidance of SSR 16-P, not only did the ALJ consider a multitude of daily activities to assess Plaintiff's ability to work, but he also explained why he discredited Plaintiff's subjective claims regarding the limiting effects of his symptoms. *See* SSR 16-3P, 2017 WL 5180304, **6, 7 (stating, "[w]e will consider an individual's statements about the . . . limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and other evidence[;]" also requires consideration of the individual's daily activities as required by 20 C.F.R. § 404.1529(c)(3)). In addition to Plaintiff activities of driving, watching television, cooking and shopping, the ALJ also considered the following activities to determine Plaintiff's degree of limitations: Plaintiff attends AA meetings several times a week, rides a bicycle, exercises at the gym daily, including lifting weights and exercising for one hour on the elliptical machine, and walks for a half hour to an hour at a time. (AR, at 16-17, citing AR, at 1174, 1372, 1378; AR, at 36-37.) The ALJ also considered the extreme inconsistencies between Plaintiff's function report and hearing testimony regarding Plaintiff's ability to engage in daily activities. (AR, at 17; *compare* AR, at 210-219 (function report stating Plaintiff is unable to take care of his personal needs independently and does not shop, clean, cook or handle finances) *with* AR, at 33, 36, 43 (hearing transcript confirming Plaintiff drives, shops and cleans, albeit with mild limitations).) Although Plaintiff testified he experiences mild limitations with daily tasks such as shopping and cleaning, the totality of Plaintiff's activities contradict Plaintiff's claim of a totally debilitating impairment. *Turner*, 613 F.3d at 1225; *Valentine*, 574 F.3d at 694.

As in *Berry*, *supra*, the ALJ properly discredited Plaintiff's subjective complaints of impairment due to inconsistencies between Plaintiff's reported symptoms and numerous

daily activities. 622 F.3d at 1234. In considering the aforementioned activities, the ALJ provided clear and convincing reasons for discrediting Plaintiff's subjective claims of impairment. (AR, at 17; 20 C.F.R. § 404.1529(c)(3)-(4).) Thus, the ALJ's finding that Plaintiff is "more than capable of basic work like tasks" is based upon substantial evidence of record and should be affirmed.

### 4. Impairment Improved with Medication

The ALJ properly relied on Plaintiff's ability to control PTSD symptoms with medication to assess Plaintiff's subjective claim of impairment.

When determining eligibility for social security benefits, impairments that can be controlled effectively with medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see* 20 C.F.R. § 404.1529(c)(3)(iv) (medications are properly considered in assessing a claimant's subjective symptoms).

The ALJ noted Plaintiff experiences some lingering signs of impairment due to PTSD. (AR, at 13.) However, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [PTSD] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR, at 17.) The ALJ specifically assessed Plaintiff's subjective PTSD symptoms in light of his ability to effectively control the symptoms with medication as indicated in VA medical records. (AR, at 15, citing AR, at 523, 592 (VA progress notes from 2012 and 2013 indicating Plaintiff's active medications for depression, anxiety and PTSD).) In light of the foregoing, the ALJ articulated clear and convincing reasons for discrediting Plaintiff's subjective claims of disability due to PTSD. *See Warre*, 439 F.3d at 1006; 20 C.F.R. § 404.1529(c)(3)(iv); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (to properly reject claimant's alleged limitations, the ALJ must provide reasoning "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.").

Viewing the administrative record as a whole, the ALJ's decision finding Plaintiff is not disabled is supported by substantial evidence of record. As such, the Court

13

recommends the ALJ's decision be **AFFIRMED** on this ground.

**B.    Reversal is Not Warranted Because the ALJ Properly Considered Medical Evidence of Record and the VA Rating**

1.    Consideration of Medical Evidence of Record

Plaintiff argues the ALJ's decision should be reversed because the ALJ failed to properly consider his treating physician's opinions. (Doc. 9-1, at 12.) Defendant contends Plaintiff's argument is meritless because Plaintiff fails to identify any specific treating physician whose opinion was disregarded, other than mere citation to the VA rating decision. (Doc. 11-1, at 10.) The Court analyzes the VA rating evidence separately in section VI.B.2. *Infra*, 15-17.

An ALJ is required to give weight to a treating physician's clinical findings, interpretation of test results, and subjective judgments. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). However, to weigh such evidence, the treating source's medical opinion must be in the case record, and the burden is on Plaintiff to produce such evidence. 20 C.F.R. § 404.1527(b) (the ALJ "will always consider the medical opinions in [claimant's] case record . . . ."); *Valentine*, 574 F.3d at 689 (it is Plaintiff's burden to prove he is disabled). Moreover, at the summary judgment stage, it is the moving party's burden to prove there is no genuine issue of material fact and the moving party must support this assertion by citing to particular parts of the record or showing that the materials cited do not establish the presence of a genuine dispute. Fed. R. Civ. P. 56(a), (c)(1).

During the administrative hearing, the ALJ specifically inquired whether the record included any statements from treating physicians to assess Plaintiff's claimed disabilities, stating as follows:

ALJ:  Okay.  Do we have any statements in the record from treating physicians or – mental health or otherwise?

[Plaintiff's Counsel:]  If you're talking about evaluations, no.  It is – what we have are the VA records and they don't do that.  You do have the VA rating decision.

///

14

(AR, at 38.) The ALJ's written decision reiterated the lack of statements or medical assessments from Plaintiff's treating physicians/mental health physicians which would support Plaintiff's claim of impairment due to PTSD and left-eye blindness. (AR, 17.)

Even with the benefit of the entire administrative record, Plaintiff fails to cite any part of the record where a particular *treating* physician—as opposed to a physician assessing Plaintiff solely for purposes of a VA disability evaluation—offers medical opinions as to the nature and severity of Plaintiff's impairments and what Plaintiff can do despite such impairments. Fed. R. Civ. P. 56(c)(1); *Valentine*, 574 F.3d at 689; 20 C.F.R. § 404.1527(a)(1) (defining "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s) including . . . what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions."); 20 C.F.R. § 404.1527(a)(2) (defining "treating source" as a medical source that has an ongoing treatment relationship with claimant, and does not include a medical source that is solely used "to obtain a report in support of [claimant's] claim for disability."). Because there is no factual support for Plaintiff's position that the ALJ disregarded opinions of a particular *treating* physician, reversal and remand is not warranted.

The ALJ's decision is based on application of correct legal standards and should be affirmed on this ground. *Penny*, 2 F.3d at 956.

2. Consideration of the VA Rating

Regarding medical opinion evidence, Plaintiff chiefly argues the ALJ did not adequately consider the VA's disability rating. (Doc. 9-1, at 12.) Defendant contends the ALJ provided specific and valid reasons for rejecting the rating. (Doc. 11-1, at 12.)

An ALJ must consider VA findings and give great weight to a VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), *superseded by rule as stated in Uthe v. Berryhill*, cv-16-3524-PHX-DGC, 2017 WL 4573620, *2, n.2 (D.

15

Ariz. Oct. 13, 2017).[6]    Nevertheless, "[b]ecause the VA and [Social Security Administration ("SSA")] criteria for determining disability are not identical," the Court allows an ALJ to "give less weight to a VA disability rating if [the ALJ] gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076 (citation omitted). Although an ALJ may not discredit a VA disability rating solely due to different evaluation criteria between the VA and SSA, a VA rating does not compel the SSA to reach an identical result and is not conclusive. *Valentine*, 574 F.3d at 695; *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011).

Here, the VA rating states Plaintiff is granted entitlement to a "total disability evaluation based on individual unemployability" ("TDIU") based on findings from June 2014 DBQs for PTSD and the eyes. (AR, at 264.) The ALJ fully recognized the medical impairments on which the VA rating is based, including PTSD and left-eye blindness, and considered the VA rating. (AR, at 14-17, 262-264.) However, the ALJ accorded less weight to the VA rating than other evidence of record. (AR, at 17.) Thus, the question becomes whether the ALJ proffered "persuasive, specific, valid reasons . . . supported by the record" for giving less weight to the VA decision. *McCartey*, 298 F.3d at 1076.

Viewing the totality of the ALJ's written decision, the ALJ had at least three reasons for not according substantial weight to the VA rating. First, the ALJ found the "medical evidence of record did not corroborate the severity of the symptoms alleged by the claimant." (AR, at 17; *supra*, 8-10.) In issuing this finding, the ALJ specifically highlighted inconsistencies between Plaintiff's subjective claims of impairment and his

---

[6] *McCartey's* holding is based on a prior version of 20 C.F.R. § 404.1504. The newly-revised regulation provides that decisions by other governmental agencies, such as the VA, are not binding on decisions by the SSA, however, the SSA "will consider all of the supporting evidence underlying the other governmental agency['s] . . . decision that [the SSA] receive[s] as evidence . . . in accordance with § 404.1513(a)(1) through (4).") The revised regulation applies to claims *filed on or after March 27, 2017.* 20 C.F.R. § 404.1504 (emphasis added). Here, Plaintiff filed his claim on December 2, 2014, therefore, the revised regulation does not apply to Plaintiff's claim such that *McCartey* is still controlling. (AR, at 154-159.)

16

activity level, which demonstrates an ability to perform work regardless of the VA's findings. (*Id.*) Second, the ALJ noted the different criteria used by the SSA and VA for purposes of disability determinations. (AR, at 17.) Third, the ALJ noted the lack of medical opinions or assessments from Plaintiff's treating physicians to support a finding of disability. (*Id.*)

The lack of medical evidence to support the severity of symptoms alleged by Plaintiff, coupled with the inconsistent evidence between Plaintiff's activity level and claimed symptoms, are specific and valid reasons for giving less weight to the VA rating decision. *Supra*, 7-14; *see Daley v. Berryhill*, 728 F. App'x 691, 693 (9th Cir. 2018) (ALJ's decision to not defer to VA disability determination when claimant's activity level is inconsistent with the VA's decision is a specific, valid reason); *see also Valentine*, 574 F.3d at 695 (ALJ is justified in rejecting the VA's disability rating if the ALJ has evidence the VA did not which undermines the evidence the VA did have). Therefore, the ALJ properly considered all evidence of record and provided persuasive, specific and valid reasons for according lesser weight to the VA rating.

The ALJ's decision should be **AFFIRMED**, as it is based on substantial evidence of record and application of correct legal standards.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends Plaintiff's MSJ be **DENIED**, Defendant's Cross-MSJ be **GRANTED**, and the decision of the ALJ be **AFFIRMED**. This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Any party may file written objections with the Court and serve a copy on all parties on or before **September 18, 2019**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **October 2, 2019**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

17

**IT IS SO ORDERED**.

DATE: September 4, 2019

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE